# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| v. ) | **Crim. No. 03cr10298-NG** |
| ) | |
| **SABARIAN TABA,** ) | |
|    **Defendant.** ) | |

**GERTNER, D.J.**

## MEMORANDUM AND ORDER RE: MOTION TO VACATE
January 13, 2010

Sabarian Taba ("Taba"), Frederick Joseph Martineau ("Martineau"), Stephen Nicholson ("Nicholson"), James Sardina ("Sardina"), Edward Ennis ("Ennis"), John Soares ("Soares"), and Michael Malouf ("Malouf") were indicted for conspiracy to distribute a quantity of cocaine, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 841(b)(1)(A). Ennis was also charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g). A superseding indictment was brought against Taba, Nicholson, Sardina, Ennis and Soares, specifying the drug quantities which the government sought to attribute to them. It added charges under 21 U.S.C. § 841(a)(1) against Taba for possession with intent to distribute cocaine and heroin, and against Nicholson and Sardina for distribution of cocaine. The superseding indictment was accompanied by notice as to enhanced penalties under 21 U.S.C. § 841(b) (for the prior convictions of Taba, Ennis and Nicholson).[1]

Of all defendants, Taba received the most severe sentence, 240 months, which was the mandatory minimum. Since he was the source of supply for all the others, he was held

---

[1] Count One charged that Taba, four named codefendants, and others "known and unknown to the grand jury," conspired to distribute, and to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846. Count One also charged that the conspiracy involved five kilograms or more of cocaine. See Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (any fact, other than a prior conviction, that increases the statutory maximum sentence must be alleged in the indictment and proved beyond a reasonable doubt).

responsible both personally and as a member of the conspiracy for five kilograms or more of cocaine. That drug quantity drove the sentence. It triggered a mandatory minimum sentence of ten years to life. 21 U.S.C. § 841(b)(1)(A). And, with an enhancement for a prior conviction for drugs, it led to a mandatory minimum sentence of 20 years to life. Taba's criminal record was otherwise relatively minimal (Criminal History II). After a two-day jury waived trial, Taba received a 240 month sentence with ten years of supervised release. He appealed; the First Circuit affirmed his conviction. United States v. Taba, 282 Fed. Appx. 1, 2 (1st Cir. 2008).

In his petition for habeas corpus relief under 28 U.S.C. § 2255, Taba claims that the quantity of cocaine attributed to the charged conspiracy -- a quantity necessary to bring the total over five kilograms -- was actually attributable to separate conspiracies, and that his counsel was ineffective for failing to make this argument. But Taba's counsel cannot have been ineffective for failing to make an argument that would have made no difference in Taba's sentence. See United States v. Santiago, 15 Fed. Appx. 2, 4 (1st Cir. 2001). In any event, whether pressed by Taba's counsel or not, this Court considered the argument at Taba's sentencing hearing and declined to accept it. Finally, even excluding the quantity Taba claims is attributable to a separate conspiracy, the Court found that Taba was still responsible for five kilograms or more of cocaine.

The government offered evidence that, during the course of the conspiracy, Taba distributed five kilograms or more of cocaine to one of the named conspirators, Frederick Martineau, and at least three additional kilograms to two unindicted coconspirators. Its evidence was straightforward -- (a) phone calls intercepted pursuant to court-authorized wiretaps; (b) drugs seized from Taba at the time of his arrest; and (c) Taba's post-arrest statements.

With respect to (a), phone calls intercepted over Nicholson's cell phone and Martineau's cell phone revealed that Nicholson obtained cocaine from Martineau in multi-ounce quantities, and that Martineau, in turn, obtained cocaine from Taba in kilogram quantities. Information from pen registers showed that during the wiretap period, 79 calls were made between Martineau's and Taba's phones. Specifically, the evidence established that Martineau obtained (or tried to obtain) at least three kilograms of cocaine from Taba during the wiretap period alone: one kilogram in April 2003, one in May 2003, and a third in July 2003. (Trial Transcript [hereinafter "Tr."] 4/4/06 at 72-73; see also Tr. 9/18/06 at 14). The evidence also showed that Taba and Martineau's drug dealing relationship stretched back over several years and included the sale of many additional kilograms of cocaine. (At one point, for example, Martineau traveled to Taba's house to pick up a kilogram of cocaine and was told it had not arrived yet; Martineau complained to Nicholson, "This has happened, like -- for years and years I've been dealing with him, and for years and years everything's, 'Mañana. Forget about it. What's the hurry?' It's been going on for so many years.") (Tr. 4/4/06 at 24).

With respect to (c), Taba's statements, FBI Special Agent John Woudenberg interviewed Taba after Taba's arrest and testified, "I remember him [Taba] saying that he . . . got a couple kilos a month and that he had known Mr. Martineau a long time and had been in the business of supplying him. . . . I think he said he had known Mr. Martineau for quite some time and that he would sell him a kilo from time to time on a monthly basis. . . . [He said that] Martineau did not purchase a large quantity of cocaine but had purchased probably two or three kilos in the past that he could recall." (Tr. 4/3/06 at 73-74).

With respect to (b), the drugs found at Taba's arrest, the police recovered 2,989 grams of cocaine and nearly one kilogram of heroin from Taba's van. Immediately afterwards, Taba told Special Federal Officer Michael Stewart and Special Agent Woudenberg that the drugs came from a single supplier in New York and that a runner brought them to Massachusetts; that he (Taba) bought the kilograms of cocaine for $25,000 each and sold them for $26,500 each; and that one of the kilos was intended for Martineau, one was intended for a person in Central Falls, and two were going to a person in Pennsylvania. (Tr. 4/3/06 at 38-39). He acknowledged that he had known Martineau for "quite some time" and that he sold him kilogram quantities of cocaine "from time to time on a monthly basis." (Tr. 4/3/06 at 73-74). He conceded that he typically purchased two kilograms per month from his supplier in New York for resale to Martineau and others. Taba, 282 Fed. Appx. at 3.

At the conclusion of all of the evidence, the Court found that Taba was guilty of the charged conspiracy and that the conspiracy involved five kilograms or more of cocaine. (Tr. 4/4/06 at 73-74). The Court also found that Taba was personally accountable for five kilograms or more of cocaine, which, in light of Taba's prior felony drug conviction, subjected him to a minimum-mandatory 20-year sentence under 21 U.S.C. § 841(b)(1)(A). Taba's argument that his counsel was ineffective for failing to argue at trial that some of the cocaine found in the van were attributable to separate, uncharged conspiracies (i.e. a Rhode Island conspiracy and a Pennsylvania conspiracy) is unavailing. First, the Court's finding that the charged *conspiracy* involved five kilograms or more of cocaine had no effect on Taba's sentence. Rather, it affected only the statutory *maximum* sentence. See United States v. De La Cruz, 514 F.3d 121, 136 (1st Cir. 2008). Since Taba's ultimate sentence did not exceed the statutory maximum, the finding,

even if erroneous, was harmless. Second, although Taba did not squarely argue the existence of multiple conspiracies at trial, the Court nevertheless considered and rejected that argument at the sentencing hearing (a ruling that was affirmed by the Court of Appeals). Third, the Court ruled at the sentencing hearing that even assuming the existence of multiple conspiracies, the multi-year relationship between Taba and Martineau itself involved five kilograms or more of cocaine.

Given this overwhelming evidence, the Court was amply justified in concluding that there was "a long-term relationship between Taba and Martineau" and that "[f]ive kilograms is a conservative . . . finding." (Tr. 9/18/06 at 11). The Court of Appeals agreed. Taba, 282 Fed. Appx. at 4.[2]

For the reasons set forth above, defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (**document #282**) is **DENIED**.

**SO ORDERED.**

Date: January 13, 2010   /s/ Nancy Gertner
　　　　　　　　　　　　　**NANCY GERTNER, U.S.D.C.**

---

[2] Taba claims that his lawyer was ineffective in failing to raise his problems with the English language. Even if Taba had not given statements, the remaining evidence was more than adequate to establish his guilt. In any event, there is nothing in the record to suggest that the defendant was not fluent in the English language.